130 N.J. Super. 336 (1974)
327 A.2d 232
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
KARL HEINZE KLUBER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1973.
Resubmitted April 14, 1974.
Decided October 8, 1974.
*338 Before Judges COLLESTER, LYNCH and MICHELS.
Mr. Richard W. Berg, Deputy Attorney General, argued the cause for appellant (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. George F. Kugler, Jr., former Attorney General of New Jersey; Mr. John J. De Cicco, Deputy Attorney General, of counsel and on the brief).
*339 Mr. William E. Norris, Assistant Deputy Public Defender, argued the cause for respondent (Mr. Stanley C. Van Ness, Public Defender, attorney).
The opinion of the court was delivered by COLLESTER, P.J.A.D.
Defendant was indicted for breaking and entering with intent to steal and larceny. At the conclusion of his trial the jury was unable to agree upon a verdict and was discharged by the trial judge. Thereafter, defendant moved pursuant to R. 3:18-2 for a judgment of acquittal, which was granted by the court. The State appeals. We withheld our decision to await the opinion rendered by our Supreme Court in State v. Sims, 65 N.J. 359 (1974). See discussion infra.
The State charged that at about 2 A.M. on January 10, 1972 defendant broke a window and entered the office of the Somerset Hotel in Somerville where he pried open a cash box and escaped with $132.70. The testimony of the State's witnesses can be summarized as follows.
Robert Radcliff, the hotel night watchman, testified that while making his rounds he heard the window being broken in the hotel office. When Radcliff reached the lobby he saw defendant come out of the office with his face covered by a blue pea jacket he was wearing. The witness said he attempted to grab the jacket but was pushed aside and defendant ran out of the hotel. Radcliff telephoned the police and told them defendant was wearing a blue pea jacket, striped trousers, and a "sort of white tassel cap with little red rings around it."
Radcliff further testified that a short time before the crime was committed he saw defendant talking with a police officer outside of the hotel and thereafter observed him staring into one of the hotel windows. He said he knew defendant, who was nicknamed "Woody," because defendant had formerly lived at the hotel.
When Radcliff reported the crime to police headquarters three police officers were directed by radio to investigate. *340 Officers Apgar and Tocci went to the hotel where they questioned Radcliff. Apgar left in his patrol car to search the area. He was joined by Officer Jones in another car. The two officers apprehended defendant six blocks from the hotel. Jones testified that defendant's trouser pockets bulged with money and a search revealed that he had $144.65 on his person. The money consisted of $17.65 in coins and $127 in bills of various denominations. Defendant told Jones, "Some of this money is mine." The officers took defendant to the hotel where he was identified by Radcliff as the man who had committed the break-in.
Officer Jones further testified that while on patrol at about 1 A.M., prior to the commission of the crime, he observed defendant near the rear of the hotel building. Since the hotel was closed the officer ordered defendant to come over to the patrol car. Jones said defendant, who wore glasses and had a beard, was wearing a blue pea jacket, a dark-colored knitted cap with a tassel, and dark trousers. The officer patted down defendant for weapons and found nothing on his person but a wallet. After questioning defendant and checking his driver's license for identification Jones released him and told defendant not to hang aroung the hotel.
Officer Tocci testified that when he and Officer Apgar arrived at the hotel to begin their investigation Radcliff gave them a description of the clothes the man who committed the crime was wearing, and said that he saw the man's face. None of the officers could recall whether defendant wore striped or solid colored pants  only that they were dark-colored.
Defendant did not testify or call any witnesses in his defense. At the conclusion of the testimony the trial judge denied a motion for acquittal "without prejudice to assert a similar motion, under R. 3:18-2." The case was then submitted to the jury. After deliberating three hours the jury informed the court it could not agree upon a verdict, whereupon it was discharged.
*341 Eight days thereafter defendant moved for a judgment of acquittal under authority of R. 3:18-2. The motion was granted by the trial judge on the ground that there was insufficient evidence upon which to base a conviction. In so ruling the judge said that the watchman's statement to the police that he had seen defendant's face should not be given any weight in view of his contrary testimony; that if the watchman's testimony was true, the individual whom he saw coming out of the hotel office could not have been defendant because he would not have had an opportunity to change his pants and hat before he was arrested by the police; that if the watchman's testimony was false, it had to be discounted, and the remaining evidence presented by the State was insufficient to support a conviction.
R. 3:18-2, which was the basis for the trial judge's action, provides that if the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for an acquittal may be made within ten days after the jury is discharged and the judge on such a motion may order the entry of a judgment of acquittal. The rule was promulgated by our Supreme Court in the 1969 Revision of Rules Governing the Courts. The tentative draft comment referring to the rule states that the provision permitting a motion for acquittal after trial is equivalent to a motion for a judgment n.o.v. See Pressler, Current N.J. Court Rules, Comment to R. 3:18-2.
The standard to be applied by the trial judge in deciding a motion for an acquittal under R. 3:18-2 is the same as that which applies when a motion for acquittal is made at the close of the State's case or at the end of the entire case. The trial judge must decide whether the evidence is sufficient to warrant a conviction. More specifically, the trial judge must determine whether the evidence, viewed in its entirety, be it direct or circumstantial, and giving the State the benefit of all of its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, *342 is sufficient to enable a jury to find that the State's charge has been established beyond a reasonable doubt. State v. Mayberry, 52 N.J. 413, 436-437 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969); State v. Reyes, 50 N.J. 454, 458-459 (1967). On such a motion the trial judge is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State. Cf. Dolson v. Anastasia, 55 N.J. 2, 5 (1969).
Here the trial judge did not apply the proper standard. It is apparent that the judge improperly weighed the evidence and disregarded the logical inferences which reasonably could be drawn therefrom. We are satisfied that the judge erroneously granted the judgment of acquittal n.o.v.
Defendant contends that the State has no right of appeal where a judgment of acquittal has been entered by the court in accordance with R. 3:18-2. He argues that to allow the State to appeal would violate the prohibition against double jeopardy embodied in the Fifth Amendment of the United States Constitution and Article I, Pargraph 11 of our State Constitution. We disagree.
The State's right to appeal in this case is governed by R. 2:3-1 which provides, in pertinent part,
In any criminal action the State may appeal * * * (b) to the appropriate appellate court from: * * * (3) a judgment of acquittal entered in accordance with R. 3:18-2 (judgment n.o.v.) * * *
Both R. 2:3-1(b)(3) and R. 3:18-2 were adopted by the Supreme Court in the 1969 Revision of Court Rules. It is clear that in permitting the trial court to enter a judgment of acquittal n.o.v. in accordance with R. 3:18-2 the Supreme Court concluded it would better serve the interests of justice and would not prejudice the legitimate interests of the State, which could appeal such a judgment. See Pressler, Current N.J. Court Rules, Comments to R. 2:3-1(b)(3) and R. 3:18-2.
*343 The argument that the State's right to appeal is barred under the constitutional prohibition of double jeopardy was raised recently in State v. Sims, 65 N.J. 359 (1974). In that case the State appealed from an order granting a new trial to defendant following a guilty verdict by the jury. The basis of the appeal was that an error of law had been committed by the trial judge in granting the motion for the new trial. The Supreme Court upheld the State's right to appeal, reversed the new trial order, and reinstated the judgment of conviction.
In discussing the issue of double jeopardy raised by the defendant the court stated:
[T]he modern view, on which commentators appear to agree, is that double jeopardy bars only a completely new prosecution after a final judgment has been rendered. The jeopardy begins when the jury is sworn and does not end until all the facts and law are decided, however many appeals and new trials it takes. See Kepner v. United States, 195 U.S. 100, 134, 24 S.Ct. 797, 49 L.Ed. 114, 126 (1904) (Holmes, J. dissenting); United States v. Tateo, 377 U.S. 463, 84 S.C. 1587, 12 L.Ed.2d 448 (1964); Moreland, Modern Criminal Procedure 277 (1950); Kronenberg, "Right of a State to Appeal in Criminal Cases," 49 J. Crim. L. & P.S. 473, 476 (1959); Miller, "Appeals by the State in Criminal Cases," 36 Yale L.J. 486, 496 (1927); Comment, "State Appeals in Criminal Cases," 32 Tenn. L. Rev. 449, 458 (1965); Note, `The State Right to Appeal: Has Maine been too Cautious?" 21 Maine L. Rev. 221, 233 (1969). As one commentator has inquired, if there is no double jeopardy when the defendant appeals, why should it attach when the state appeals? Miller, "Appeals by the State in Criminal Cases," 36 Yale L.J., supra at 496. [at 370]
We think the rationale of Sims with respect to the issue of double jeopardy is applicable to the instant case. There is a distinction between a judgment of acquittal entered at the conclusion of a trial and a judgment n.o.v. entered pursuant to R. 3:18-2. In the first situation defendant has been afforded his right to have his trial completed before a judge and jury, or the judge sitting as a trier of the facts. The judgment of acquittal in such a case is based on the law as applied to the facts which were presented. It assumes the *344 attributes of a general verdict and is a bar to a second trial for the same offense because of the constitutional prohibition against double jeopardy. On the other hand, a judgment of acquittal n.o.v. entered under R. 3:18-2 involves no issues of fact raised during the trial. The sole issue before the court is a question of law. We do not conceive that our Constitution contemplated that such a judgment of acquittal should be accorded the same nonappealable status as either a verdict of acquittal entered by a jury or a directed verdict entered by a judge during or at the conclusion of the trial.
It is well settled that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments. Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974, 978 (1949); Illinois v. Somerville, 410 U.S. 458, 470, 93 S.Ct. 1066, 35 L.Ed.2d 425, 434 (1973). In the instant case defendant's trial was completed upon the discharge of the jury and a retrial of the indictment was not barred under the principle of double jeopardy. United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). To hold that a judgment n.o.v. erroneously entered by the trial court would bar a second trial would be contrary "to the public's interest in fair trials designed to end in just judgments."
The constitutionality of the State's right to appeal from errors of law has been upheld in other jurisdictions. See State v. Witte, 243 Wis. 423, 10 N.W.2d 117 (Sup. Ct. 1943); State v. Evjue, 254 Wis. 581, 37 N.W.2d 50 (Sup. Ct. 1949); State v. Brunn, 22 Wash.2d 120, 154 P.2d 826 (Sup. Ct. 1945); State v. Portee, 25 Wash.2d 246, 170 P.2d 326 (Sup. Ct. 1946). Cf. In re Gaskins, 430 Pa. 298, 244 A.2d 662 (Sup. Ct. 1968).
In our view the State's appeal is not barred under the constitutional prohibitions against double jeopardy because jeopardy does not end with the trial court's ruling under R. 3:18-2. Rather, the issue of defendant's guilt is still unresolved "until all the facts and law are decided, however *345 many appeals and new trials it takes." State v. Sims, supra, 65 N.J. at 370. Moreover, there is nothing fundamentally unfair in granting to the State the right to appeal from such a judgment of acquittal. Ordinarily, it would be anticipated that the prosecutor would move the indictment for retrial, and defendant's reasonable expectations are not to the contrary. The result of permitting appellate review of such a judgment of acquittal under the circumstances present here is to either affirm the action of the trial judge, in which case defendant would not be subject to retrial, or to reverse the judgment. In the latter instance defendant will not be placed in jeopardy a second time by a reversal of the trial court's ruling  he is in the same position he was when the jury disagreed upon its verdict and was discharged.
Accordingly, the judgment of acquittal entered by the trial judge is reversed and the case is remanded for a new trial.