572 A.2d 1170
STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
HARRY D. SUGAR, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 21, 1990—Decided April 11, 1990.

Before Judges KING, SHEBELL and BAIME.

*Jay H. Greenblatt* argued the cause for appellant (*Greenblatt & Riesenburger*, attorneys; *Jay H. Greenblatt* and *Mitchell H. Kizner*, on the brief).

*Catherine A. Foddai*, Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo*, Attorney General, attorney; *Catherine A. Foddai*, of counsel and on the brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

Defendant Harry D. Sugar appeals from his 1989 jury conviction on the lesser-included offense of voluntary manslaughter based upon an imperfect or unreasonable self-defense following his trial on a charge of second degree murder in violation of *N.J.S.A.* 2A:113–2. Defendant was sentenced to a term of not less than 6 years nor more than 8 years. Defendant's arguments on appeal are as follows:

POINT I: IT WAS IMPROPER TO CHARGE MANSLAUGHTER BY IMPERFECT SELF–DEFENSE;

POINT II: THE CHARGE ON RETREAT WAS NOT SUPPORTED BY THE EVIDENCE AND SHOULD NOT HAVE BEEN GIVEN.

The victim, Joan Sugar, married the defendant, a general medical practitioner, in April of 1978. Thereafter, the parties resided in a home owned by defendant on Walnut Road in Vineland. Defendant's wife died late on the night of Sunday, July 8, 1979, or early on the morning of July 9, 1979, following an altercation between the couple. Defendant buried his wife

under a picnic table in the backyard of their home on the morning she died. He then drove his wife's car a distance of less than a mile from the house, parked it and ran home. When contacted by police concerning the presence of the vehicle in an uninhabited area, defendant advised the police of the argument with his wife, but claimed that she left in the car and had been missing ever since. Joan's body was found by the police on August 6, 1979. Defendant was arrested the next day and charged with her murder.

Any offense related to Joan's death on July 8 or 9, 1979, would have been committed prior to the effective date of the New Jersey Code of Criminal Justice, September 1, 1979. *N.J. S.A.* 2C:1-1 *et seq.* The Code therefore does not apply to this offense. *N.J.S.A.* 2C:1-1(b). A review of the legal history of this case from 1979 to the commencement of the present trial in 1989 would not further this court's inquiry into the issues presented in the present appeal. *See State v. Sugar*, 84 *N.J.* 1, 417 *A.*2d 474 (1980); *State v. Sugar*, 100 *N.J.* 214, 495 *A.*2d 90 (1985); *State v. Sugar*, 108 *N.J.* 151, 527 *A.*2d 1377 (1987) (in order of chronology).

The most recent trial presentation of the State's case on the second degree murder charge against defendant proceeded on the theory that defendant killed his wife by injecting her with toxic drugs. Autopsy results revealed no external or internal signs of trauma to the decedent. Although the jaw was decomposed to the point of revealing the bone, there was no sign of trauma or hemorrhage. A toxicological analysis of organ tissue revealed Fentanyl and Droperidol in both kidney and liver specimens, causing the medical examiner to conclude that death resulted from the toxic effects of Innovar.

By way of defense, defendant asserted that the victim, who was taller and heavier than he, attacked him with a hammer after an argument over finances. Defendant testified at trial that: "I ducked the [second] blow and then, I mean—I pulled my fist back and I thought to myself I'm going to hit her with

every ounce of strength that I have...." Defendant contended that he was dazed by a forearm blow from the decedent, and that when his head cleared, he found his wife lying on the floor, very pale. He denied any recollection of hitting her, but stated he began treating her for a concussion after finding that she was not breathing and had no blood pressure. He claimed she had a history of hyperthyroidism, palpitations and high blood pressure.

Defendant asserted that he attempted to resuscitate his wife by using CPR, but first he gave her an injection of Innovar in an attempt to save her life. He claimed it was only after he was convinced she was dead and could not be helped that he buried her underneath the picnic table. Among other experts, defendant called Dr. Frederick Zugibe, the then medical examiner of Rockland County, New York, who testified that because of the condition of the body it could not be determined with a reasonable degree of medical certainty that the victim died of a toxic injection.

Defendant moved after the jury verdict for judgment of acquittal notwithstanding the verdict (*R.* 3:18-2) and alternatively for a new trial (*R.* 3:20-1), although he had not moved for a judgment of acquittal either at the end of the State's case or at the end of the entire case. *See R.* 3:18-1. Under *R.* 3:18-2, a motion for judgment of acquittal may be made after a jury returns a verdict of guilty even if no motion to acquit pursuant to *R.* 3:18-1 is made earlier.

When the motion is made at the end of the State's case pursuant to *R.* 3:18-1, the trial judge must deny the motion if "viewing [*only*] the State's evidence in its entirety, be that evidence direct or circumstantial," and giving the State the benefit of all reasonable inferences, "a reasonable jury could find guilt ... beyond a reasonable doubt." *State v. Reyes,* 50 *N.J.* 454, 458-59, 236 *A.*2d 385 (1967).

It is generally stated that whether the motion to acquit is made at the end of the State's case or after the end of the

entire case the standard is the same, *i.e.*, only the State's proofs will be considered. *State v. Kluber*, 130 *N.J.Super.* 336, 341–42, 327 *A.*2d 232 (App.Div.1974), certif. den., 67 *N.J.* 72, 335 *A.*2d 25 (1975). Likewise, this court will apply the same standard as the trial court to decide if the trial judge should have granted a judgment of acquittal. *State v. Moffa*, 42 *N.J.* 258, 263, 200 *A.*2d 108 (1964). No New Jersey case has addressed the issue of the test to be used where after a guilty verdict on a lesser-included offense the defendant moves for a judgment of acquittal n.o.v. under *R.* 3:18–2. *Cf. State v. Kleinwaks*, 68 *N.J.* 328, 335–36 n. 5, 345 *A.*2d 793 (1975).

■ We hold that where, as here, a motion for judgment of acquittal is made after the return of a jury verdict, and a defendant has had the benefit of the submission to the jury of a lesser included offense based upon proofs adduced on his own case, even though he may have objected to its submission, the sufficiency of the evidence should be tested upon a consideration of the entire record and not merely a limited application of the *Reyes* criteria to the State's proofs to determine whether a conviction of the lesser-included offense can be sustained. *Cf. United States v. Foster*, 783 *F.*2d 1082, 1085 (D.C.Cir.1986) (en banc).

■ On appeal defendant does not take issue with the trial judge's denial of his motion for new trial, rather he claims that a "judgment of acquittal n.o.v. should have been granted. *R.* 3:18–2." The substance of defendant's contention is that his conviction for manslaughter by imperfect self-defense must be reversed because the only evidence bearing upon the verdict was the defendant's own testimony indicating that he punched his wife one time with his fist in order to stop her from hitting him with a hammer. He asserts that there was a lack of evidence from which the jury could find beyond a reasonable doubt that he had an intention to kill or cause grievous bodily harm by striking.

Defendant correctly points out that there was "no evidence that the defendant struck repeated blows." Nonetheless, the jury was free to infer that there was a direct relationship between the incident that defendant described as his pulling his fist back "to hit her with every ounce of strength I have," and his then finding her unconscious and not breathing or having any blood pressure. Indeed, defendant himself at that point diagnosed that she had sustained a concussion, and he treated her based on his diagnosis of head injury. He nonetheless maintained at trial that he could not recall hitting her and did not believe he killed her. Defendant's own medical reasoning at trial gave the jury sufficient evidence to make the connection between a blow and his wife's death when he stated with regard to patients with a concussion that:

> [T]here is a spectrum. In that circle there is a spectrum of patients. Some are so—the injury is so slight that there is absolutely—forget it, there is nothing doing. On the other hand, there is another—at the other extreme there is the patient that dies immediately.
>
> Famous case was reported in France is a prisoner. He ran full blast into a brick wall and he dropped dead. And they looked at him, did an autopsy. They couldn't find a thing. So there is a spectrum.

Here, defendant buried his wife's body and prevented its discovery for a sufficient period of time for the body to putrefy and for the brain to liquefy so that an autopsy would not be of assistance in determining whether one forceful blow as described by him directly caused her death. In these circumstances, we are satisfied that the jury could reasonably conclude that defendant actually struck his wife and that he thereby inflicted a blow of sufficient force to have killed her. The jury had for its consideration an immediate and direct cause-and-effect scenario as related by defendant's own testimony. He even provided his diagnosis and a medical explanation to the jury.

■ Defendant's testimony that he decided to strike his wife with every ounce of his strength, coupled with his testimony as to her virtually immediate death despite immediate medical care, provided a reasonable basis from which the jury could find that he intended to cause her grievous bodily harm by striking

her and that her death ensued as a direct result of the blow. Defendant's contention of insufficient evidence to support the voluntary manslaughter conviction is without merit.

We recognize that a trial judge may not instruct a jury as to the elements of a crime for which there is insufficient evidence to support a conviction. *State v. Christener,* 71 *N.J.* 55, 67, 362 *A.*2d 1153 (1976); *State v. Sinclair,* 49 *N.J.* 525, 540, 231 *A.*2d 565 (1967). It was, however, incumbent upon the court to charge "unreasonable" or "imperfect" self-defense in this pre-Code case as only "a scintilla of evidence" was necessary to warrant the charge. *See State v. Powell,* 84 *N.J.* 305, 316–19, 419 *A.*2d 406 (1980). *See also State v. Bowens,* 108 *N.J.* 622, 629–30, 633, 532 *A.*2d 215 (1987).

Defendant further argues that the trial judge's charge on retreat is not supported by the evidence. Defendant's argument is premised on the asserted absence of evidence of the use of deadly force. However, defendant's own words provided sufficient evidence that he employed deadly force in his alleged self-defense. Deadly force is force which the actor uses knowing it will create a substantial risk of death or serious bodily harm. *State v. Abbott,* 36 *N.J.* 63, 71, 174 *A.*2d 881 (1961). Defendant stated that he intended to hit his wife with every ounce of strength he had. A jury could reasonably find on this testimony that deadly force was in fact intended by defendant.

Affirmed.