**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1398-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JEFFREY R. BUTLER,

     Defendant-Appellant.

_____

Submitted May 7, 2019 – Decided June 19, 2019

Before Judges Hoffman and Enright.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 14-12-3862.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jeffrey Butler appeals from the judgment of conviction entered by the trial court after a jury found him guilty of second-degree conspiracy to commit witness tampering, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:28-5d, and harassment, N.J.S.A. 2C:33-4a. For the reasons that follow, we affirm.

I.

This case arises from a physical altercation between defendant and his brother-in-law, D.M. On June 7, 2014, defendant assaulted D.M. with a metal pole upon learning that D.M. advised defendant's wife, K.B, to leave defendant. Prior to the assault, D.M. had moved into defendant's trailer home in Chesilhurst, where defendant lived with K.B.

After the police filed aggravated assault charges against defendant, he conspired with K.B. to bribe D.M. to have D.M. drop the charges against defendant, in exchange for a monetary payment. Specifically, on August 18, 2014, K.B. sent D.M. text messages offering him between one- and two-thousand dollars if he would drop the charges against defendant. The text messages specified that D.M. would receive the money from defendant's attorney. After he received the text messages, D.M. presented them to the Camden County Prosecutor's Office, which proceeded to record a phone call

between D.M. and K.B., with D.M.'s consent. The recording included the following exchange:

> D.M.: [H]as [defendant] asked you to tell me directly to get me to drop the charges? Did he talk to you?
>
> K.B.: Well, that's what . . . it would be.
>
> D.M.: No, I'm saying did he ask you to ask me that?
>
> K.B.: Not necessarily. He's been kind of telling me -- well, yes and no. He was kind of telling me to talk to you and see what -- if you would, and this, that, and the other. I said, listen, I'll put it out there a couple times. If he chooses to do that then he'll choose to do it. . . .
>
> D.M.: What's he saying to you about . . . it?
>
> K.B.: Really not much. Just that -- for me to try to -- for me to get you to see if you -- if you would drop the charges . . . .
>
> D.M.: Is he pressing you to get me to drop the charges?
> . . . .
>
> K.B.: Not constantly. But it's been brought up enough times . . . .

During the same conversation, K.B. stated that defendant told her to "tell [D.M.] about the money and going through an attorney."

In October 2014, a Camden County Grand Jury charged defendant with second-degree aggravated assault, N.J.S.A. 2C:12-1b(1) (count one); third-degree aggravated assault, N.J.S.A. 2C:12-1b(2) (count two); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5d (count three); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d (count four); third-degree terroristic threats, N.J.S.A. 2C:13-3b (count five); second-degree tampering with witnesses and informants, N.J.S.A. 2C:28-5d and 2C:28-5a(1) (count six); and second-degree conspiracy to tamper with witnesses, N.J.S.A. 2C:5-2 and 2C:28-5d (count seven). Counts six and seven of the indictment also charged K.B. with witness tampering and conspiracy.

Pursuant to a plea agreement, K.B. pleaded guilty to a disorderly persons offense of obstruction, prior to defendant's trial. Under the agreement, the State agreed to dismiss the witness tampering and conspiracy charges against K.B., contingent upon her providing truthful testimony at defendant's trial; K.B. further agreed she would not assert her spousal privilege. The trial court denied defendant's pre-trial motion in limine to bar the State from presenting any testimony from K.B.

At trial, the State primarily relied on the testimonies of D.M. and K.B., along with the recorded phone conversation and text messages between them.

4 <span>A-1398-17T4</span>

At one point, D.M. testified that while defendant assaulted him, he could "remember hearing" defendant call him "fucking spic." Defendant's counsel moved for a mistrial, arguing the issue of race was inappropriately injected into the trial. The trial judge denied the motion, finding the defense was on notice of the statement, yet it never moved to "have that portion of the statement redacted or barred." The judge further found nothing "improper about the [S]tate introducing statements allegedly made by the defendant while he's allegedly in the course of committing a crime." The judge also found that defendant's statements "go to his intent."

After the State rested, defendant filed a Reyes[1] motion to dismiss the witness tampering counts. The defense argued that because K.B. and defendant sought to pay D.M. money through an attorney, the offer to pay D.M. was not illegal. The trial court denied the motion, finding that when there is "some type of monetary inducement to not be cooperative or to drop charges, [it] certainly does interfere with an official investigation or an official proceeding."

At trial, defendant argued self-defense. His counsel contended that D.M. had a knife and was intoxicated at the time of the incident. The defense further noted that D.M. filed a lawsuit related to the incident against the trailer's

---

[1]  State v. Reyes, 50 N.J. 454 (1967).

management company; as a result, he maintained a financial interest in the outcome of the trial.

The jury returned a verdict of not guilty on counts one through four and six, but guilty on the lesser-included charge of harassment on count five, and second-degree conspiracy to tamper with witnesses on count seven.

Defendant filed a motion for judgment of acquittal after discharge of the jury. R. 3:18-2. The trial judge heard oral argument on the post-trial motion, where defense counsel admitted it was proffering the same argument as the Reyes motion – that the tampering charges do not constitute a crime. The trial judge denied defendant's motion, finding "the evidence that was presented to this jury was enough to satisfy [the] verdict that was rendered." Specifically, the judge pointed to the "recorded conversation of [K.B.] with the victim discussing the dropping of the charge. The jury was free to make their own determination as to what they believe the substance of that call was."

The trial judge sentenced defendant to eight years imprisonment, with no period of parole ineligibility, on count seven. She also sentenced defendant to thirty days in the county correctional facility, on count five, to run concurrent to count seven. The State then moved for the judgment of conviction to be amended, specifically to change the sentences from concurrent to consecutive, as "any

6

sentence received on a substantive offense attached to a conspiracy or a witness tampering charge must run consecutive." The judge granted the motion, and amended the harassment sentence to fines only. This appeal followed, with defendant presenting the following arguments:

POINT I AS [K.B.'S] WAIVER OF MARITAL PRIVILEGE WAS NOT MADE FREELY AND VOLUNTARILY, THE TRIAL COURT ERRED WHEN IT ALLOWED [HER] TO TESTIFY AGAINST DEFENDANT. (Not raised below)

POINT II THE TRIAL COURT WAS WRONG WHEN IT DENIED DEFENDANT'S MOTION TO EXCLUDE HIS WIFE'S TESTIMONY AS THE PLEA AGREEMENT IMPERMISSIBLY RESTRAINED HER ABILITY TO TELL THE TRUTH. (Raised below)

POINT III THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO INTERJECT THE ISSUE OF RACE IN THE TRIAL. (Raised below)

POINT IV THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S REYES MOTION. (Raised below)

POINT V THE TRIAL COURT WAS WRONG WHEN IT DENIED DEFENDANT'S MOTION FOR A NEW TRIAL. (Raised below)

POINT VI AS THE JURY CHARGE ON CONSPIRACY TO COMMIT WITNESS TAMPERING WAS INCOMPLETE AND VAGUE, A NEW TRIAL IS REQUIRED. (Raised below)

A-1398-17T4

POINT VII THE TRIAL COURT'S CUMULATIVE ERRORS DENIED DEFENDANT HIS RIGHT TO A FAIR AND RELIABLE TRIAL.

POINT VIII GIVEN THE UNIQUE CIRCUMSTANCES OF THIS CASE, AN EIGHT YEAR SENTENCE WAS UNDULY HARSH, EXCESSIVE AND UNFAIR.

POINT IX TRIAL COUNSEL WAS INEFFECTIVE. (Not raised below)

(1) Trial counsel was ineffective because she failed to object that [K.B.'s] waiver of marital privilege was the product of coercion.

(2) Defendant's trial attorney was ineffective when she failed to present the defense of Ignorance and Mistake pursuant to N.J.S.A. 2C:2-4.

(3) Trial counsel was ineffective because she failed to object to the verdict sheet as to Count Seven.

## II.

### A. Admission of K.B.'s Testimony

In defendant's first point, he contends that K.B. did not freely and voluntarily waive her marital privilege. His second point challenges the trial judge's denial of defendant's pre-trial motion in limine, which sought to bar K.B. from testifying "by asserting the plea agreement had impermissibly constrained her capacity to tell the truth." We address each argument respectively.

Defendant's first point asserts that K.B. was impermissibly coerced into pleading guilty and waiving marital privilege "after being held in jail for sixteen days for being one hour late to court," and "denied medication for anxiety and depression" while incarcerated. Because defendant did not present this argument to the trial court, we review the argument under the plain-error standard. R. 2:10-2; see also State v. Singleton, 211 N.J. 157, 182 (2012). To warrant reversal, the error must be "clearly capable of producing an unjust result." R. 2:10-2. This argument lacks merit since the trial judge found K.B.'s "guilty plea . . . knowing and voluntary," and during the plea hearing, K.B. confirmed her understanding that she did not have to testify against her spouse. Moreover, defendant had the opportunity to cross-examine K.B. about her motive for implicating her husband – at one point during cross-examination, she acknowledged it was "a priority for [her] to get out of jail." We discern no reversible error.

Defendant's second point reiterates the arguments raised during the motion in limine – that K.B. was constrained from testifying truthfully as a result of the prosecutor stating at the plea hearing that if K.B. "fails to in any way testify in accordance with the statement that she's given previously," then her indictment would be reinstated. Defendant argues that this language "far

9

exceeds a condition that the witness testify truthfully, and instead travels into the unlawful territory of inhibiting the truth and hindering a free flow of information."

In support of this argument, defendant cites to State v. Feaster, 184 N.J. 235, 251 (2005), where a State witness recanted his trial testimony, and was prepared to testify at the defendant's post-conviction relief hearing, when he was threatened by State officials that he would be charged with perjury if he went forward with such testimony. The Court held that "the State may not use threats or intimidating tactics that substantially interfere with a witness's decision to testify for a defendant." Ibid.

Here, after oral argument, the trial judge denied defendant's motion, finding K.B. "certainly free to testify as to what the truth is[,] . . . . and [defendant's counsel] is free to go into any area of cross-examination that [it] feel[s] is important for [the defense's] case." The judge was unable to find "how the [S]tate hinders [defendant] in any way in this case." The judge then distinguished this case from Feaster, where "there was a threat of perjury. [Here, t]here's no threat of perjury. There is an agreement if [she] testif[ies] different[ly] from the factual basis [she] gave in court," then the State would be able to reinstate the indictment.

We agree with the trial judge's oral opinion, and further add that defendant provides no support for his assertion that if K.B. testified inconsistently with her plea hearing testimony or prior statements to police, then the reinstatement of her indictment would be unlawful or inappropriate. Defendant fails to show error by the trial court in denying defendant's motion in limine to bar K.B. from testifying. Defendant's second point lacks merit.

### B.    Defendant's Motion for Mistrial

Defendant contends when D.M. testified that defendant called him a "fucking spic," the trial judge erred in denying his motion for mistrial, and for declining to provide a curative instruction. Defendant asserts the judge failed to "ensure that inflammatory, prejudicial evidence was not presented to the jury. [N.J.R.E.] 403."

When the trial judge denied the motion for a mistrial, she added:

> [T]here's no curative instruction being requested of the [c]ourt regarding how [the jury is] to consider that portion of this statement. If you seek to have me read a certain instruction, a limiting instruction . . . . I will read that to the jury during the . . . legal instructions portion of the trial. I'm not sua sponte giving this jury any type of curative as to how they should consider the defendant's statement because it simply highlights the term that you are seeking not to be highlighted. But I do not find anything improper about the [S]tate introducing statements allegedly made by . . . defendant while he's allegedly in the course of committing a crime.

"Whether an event at trial justifies a mistrial is a decision 'entrusted to the sound discretion of the trial court.'" State v. Smith, 224 N.J. 36, 47 (2016) (quoting State v. Harvey, 151 N.J. 117, 205 (1997)). "Appellate courts 'will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice.'" Ibid. (quoting State v. Jackson, 211 N.J. 394, 407 (2012)). And since defendant's counsel did not argue for a curative instruction, "defendant must show that the failure to give such an instruction sua sponte constitutes an error 'clearly capable of producing an unjust result.'" State v. Mayes, 321 N.J. Super. 619, 633 (App. Div. 1999) (quoting State v. Loftin, 287 N.J. Super. 76, 97 (App. Div. 1996)).

> Intrinsic evidence is evidence that "directly proves" the charged offense or evidence of "acts performed contemporaneously with the charged crime . . . [that] facilitate the commission of the charged crime." [State v.]Rose, 206 N.J. [141,] 180 [(2011)] (quoting United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010)). It is distinguishable from "other crimes" evidence under Rule 404(b) because it is not evidence of another crime; it directly proves the charged offense. Id. at 177. "[E]vidence that is intrinsic to a charged crime need only satisfy the evidence rules relating to relevancy, most importantly the [N.J.R.E.] 403 balancing test." Id. at 177-78. In contrast, under Rule 404(b), evidence of other crimes is not admissible but it can be used for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a

material issue in dispute." N.J.R.E. 404(b); see Rose, 206 N.J. at 177.

[State v. B.A., __ N.J. Super. __ (2019) (slip op. at 23-24).]

Here, the trial judge admitted the statement as intrinsic evidence, finding nothing "improper about the [S]tate introducing statements allegedly made by the defendant while he's allegedly in the course of committing a crime." The judge further found defendant's statements "go to his intent," thereby finding the evidence admissible under Rule 404(b). We find no error in these rulings, and further note defendant failed to file a motion to exclude the statements in the pre-trial stages; defendant also failed to seek a curative instruction, and the judge refused to give one sua sponte. We discern no abuse of discretion or error clearly capable of producing an unjust result.

C.     Defendant's Reyes and Judgment of Acquittal Motions

Points four and five of defendant's brief argue that the trial judge erred in denying his Reyes motion and his motion for judgment of acquittal for the same reason: that defendant "mistakenly believed he was engaged in a lawful settlement negotiation with his brother-in-law which would be finalized with the assistance of a lawyer."

When we review the grant or denial of a motion for a judgment of acquittal, we apply the same standard as the trial court. State v. Sugar, 240 N.J. Super. 148, 153 (App. Div. 1990) (citing State v. Moffa, 42 N.J. 258, 263 (1964)). That standard remains the same, whether the motion is made at the close of the State's case, at the end of the entire case, or after a jury returns a guilty verdict under Rule 3:18-2. State v. Kluber, 130 N.J. Super. 336, 341 (App. Div. 1974). We will deny a motion for a judgment of acquittal if

> the evidence, viewed in its entirety, be it direct or circumstantial, and giving the State the benefit of all of its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, is sufficient to enable a jury to find that the State's charge has been established beyond a reasonable doubt.
>
> [Stater v. Fuqua, 234 N.J. 583, 590-91 (2018) (quoting Kluber, 130 N.J. Super. at 341-42).]

Giving the State the benefit of all favorable inferences which reasonably could be drawn, we find there was sufficient evidence for a jury to find that defendant and K.B. conspired to offer D.M. money to have defendant's charges dropped. While defendant correctly notes that D.M. did not actually have this power, he nevertheless sought to pay D.M. to obstruct, prevent, or impede the official proceeding arising from the assault charge against defendant. The trial judge's rulings on these points are affirmed.

14

## D. The Verdict Sheet

Defendant next posits the verdict sheet on counts six and seven were "incomplete, ambiguous, and denied him a fair trial and reliable proceeding." Specifically, the defense points to the fact that on count six of the verdict sheet, the jury did not have to consider whether defendant committed bribery of a witness or informant, N.J.S.A. 2C:28-5d, since it first found defendant not guilty of obstruction under N.J.S.A. 2C:28-5a, the first question within count six. According to defendant, "This latter finding was required to determine the degree of the [conspiracy] offense. N.J.S.A. [2C:]28-5(d). If the jury answered in the affirmative, [d]efendant would be convicted of a second-degree offense, otherwise it would have been considered a third-degree crime. N.J.S.A. 2C:28-5(a)." The verdict sheet directed the jury to skip the bribery question within count six, and on count seven of the verdict sheet, the jury was charged with determining whether defendant committed conspiracy "with the purpose of promoting or facilitating the commission of the crime of tampering with witnesses." Defendant contends the guilty verdict under count seven "allowed [d]efendant to be convicted of a higher degree offense without requiring the jury to make a specific factual finding," specifically, a finding of bribery, "as required under the witness tampering statute. N.J.S.A. 2C:28-5."

 A-1398-17T4

Defendant's counsel did not raise this argument until after the verdict was rendered. It was orally argued and decided in defendant's motion for a new trial on the same day as sentencing. After argument, the trial judge denied defendant's motion, stating in relevant part:

> I'm more than satisfied that [the] jury had the law on this count. [Defendant] was on notice that this was a second[-]degree offense. The [c]ourt read the law to this jury for witness tampering, what made it a third[-]degree, and what made it a second[-]degree. A conspiracy under the theory that the [S]tate was proceeding on was a second[-]degree for which [defendant] had notice on.

The judge then noted the indictment explicitly charged defendant with tampering and conspiracy to tamper under N.J.S.A. 2C:28-5d, the second-degree bribery offense, in counts six and seven.

A trial court's verdict sheet is reviewed under Rule 2:10-2, State v. Galicia, 210 N.J. 364, 386 (2012), which provides:

> Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result, but the appellate court may, in the interest of justice, notice plain error not brought to the attention of the trial or appellate court.

We agree with the State's argument that defendant was only ever charged with the bribery portion of the witness tampering statute; and at trial, the State "presented just one theory of witness tampering for the jury to either accept or

16

reject: bribery . . . . which is always a second-degree crime." N.J.S.A. 2C:28-5d." The jury received a number of different forms of evidence of witness tampering, from the text messages, the recorded phone conversation, and testimonies of D.M. and K.B., and it all presented the same event, which is that defendant and K.B. conspired to pay D.M. money, between one- and two-thousand dollars, in exchange for his efforts to have the charges against defendant dropped. Any error was not clearly capable of producing an unjust result.

### E.    Defendant's Sentence

Defendant's next point on appeal contends that his sentence "was excessive, harsh, and fundamentally unfair." He further contends "the trial court erred when it rejected several of the mitigating factors advanced at sentencing." After review of the trial judge's oral opinion at sentencing and the applicable law, we find defendant's argument lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

### F.    Ineffective Assistance of Counsel

Lastly, defendant raises three ineffective assistance of counsel claims in his ninth point on appeal. New Jersey courts "routinely decline to entertain ineffective-assistance-of-counsel claims on direct appeal because those claims

A-1398-17T4

'involve allegations and evidence that lie outside the trial record.'" State v. Hess, 207 N.J. 123, 145 (2011) (citation omitted). Such claims generally "should be determined in a post-conviction relief [PCR] proceeding." State v. McDonald, 211 N.J. 4, 30 (2012) (citations omitted). We therefore dismiss defendant's ineffective-assistance-of-counsel claim without prejudice to a proper PCR petition and an evidentiary hearing, if appropriate.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1398-17T4