**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0400-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

FRANCIS BRACE, a/k/a
FRANCIS BRACE, JR.,
and JAZMEIR JACKSON,

    Defendant-Appellant.

_____

Submitted October 28, 2019 – Decided   February 18, 2020

Before Judges Fasciale and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 15-04-0352.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After trial with two codefendants, Gregory Oliver and Jahmad Green, defendant Francis Brace appeals from his conviction by jury and sentence for first-degree aggravated manslaughter of Jaleek Burroughs, N.J.S.A. 2C:11-4(a)(1), as a lesser-included offense of first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2), N.J.S.A. 2C:2-6, and N.J.S.A. 2C:2-3(d) (count one); two counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (counts two and nine); second-degree aggravated assault of Alaysia Chambers, N.J.S.A. 2C:12-1(b)(1), as a lesser-included offense of first-degree attempted murder, N.J.S.A. 2C:5-1, N.J.S.A. 2C:11-3(a), and N.J.S.A. 2C:2-3(d) (count eight); and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count three). Both victims were shot in an early-morning incident on August 31, 2014. The State alleged defendant and his codefendants shot at a gold Ford Taurus from which shots were also fired. Burroughs was shot in the head and pronounced dead on the sidewalk where he fell. Chambers, who was seated in Brace's BMW in which he had earlier picked her up, was also shot in the head; she survived her wound. Neither of the victims were the intended targets of the shootings.

On appeal, defendant argues:

POINT I

A-0400-17T4

THE VERDICT OF AGGRAVATED MANSLAUGHTER WAS NOT SUPPORTED BY THE EVIDENCE AND SHOULD IN THE INTEREST OF JUSTICE BE SET ASIDE, AND DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO MOVE TO SET ASIDE THE VERDICT.

POINT II

DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL WHEN THE STATE PUBLISHED TO THE JURY A GRUESOME PHOTOGRAPH OF THE HOMICIDE VICTIM, PARTICULARLY WHERE THAT EXHIBIT WAS LATER RULED INADMISSIBLE UNDER N.J.R.E. 403.

POINT III

THE COURT ERRED IN WEIGHING THE AGGRAVATING SENTENCING FACTORS, AND THEREFORE THE SENTENCE OF [TWENTY-SEVEN] YEARS WAS MANIFESTLY EXCESSIVE.

POINT IV

THE COURT ERRED IN SENTENCING . . . DEFENDANT TO CONSECUTIVE SENTENCES BY MISAPPLYING THE GUIDELINES SET FORTH IN STATE V. YARBOUGH.[1]

For the reasons we now discuss, we affirm.

I.

---

[1] 100 N.J. 627 (1985).

A-0400-17T4

Defendant moved for and was denied a directed verdict after the State rested its case. Defendant now contends counsel was ineffective for failing to renew the motion pursuant to Rule 3:18-2 following the guilty verdict because the trial judge would have vacated his conviction for aggravated manslaughter had the issue been presented. Specifically, defendant submits there was no evidence he recklessly "caused" Burroughs's death within the strictures of N.J.S.A. 2C:11-4(a)(1),[2] and codefendant Oliver admitted to shooting

---

[2] N.J.S.A. 2C:11-4(a) provides:

> Criminal homicide constitutes aggravated manslaughter when:
>
> (1) The actor recklessly causes death under circumstances manifesting extreme indifference to human life; or
>
> (2) The actor causes the death of another person while fleeing or attempting to elude a law enforcement officer in violation of subsection b. of N.J.S.[A.] 2C:29-2. Notwithstanding the provision of any other law to the contrary, the actor shall be strictly liable for a violation of this paragraph upon proof of a violation of subsection b. of N.J.S.[A.] 2C:29-2 which resulted in the death of another person. As used in this paragraph, "actor" shall not include a passenger in a motor vehicle.

Burroughs in the eye. Accordingly, defendant maintains this court should find plain error and vacate his conviction of the manslaughter charge.

Claims of ineffective assistance of counsel are not typically reviewed on direct appeal. See State v. Hess, 207 N.J. 123, 145 (2011) ("[W]e routinely decline to entertain ineffective-assistance-of-counsel claims on direct appeal because those claims 'involve allegations and evidence that lie outside the trial record.'" (quoting State v. Preciose, 129 N.J. 451, 460 (1992))). "However, when the trial itself provides an adequately developed record upon which to evaluate defendant's claims, appellate courts may consider the issue on direct appeal." State v. Castagna, 187 N.J. 293, 313 (2006).

As the record in this case reveals, defendant's counsel moved for a judgment of acquittal, R. 3:18-1, after the State rested. The trial judge denied the motion. If counsel had moved under Rule 3:18-2, the trial judge would have applied the same standard

> as that which applies when a motion for acquittal is made at the close of the State's case or at the end of the entire case. The trial judge must decide whether the evidence is sufficient to warrant a conviction. More specifically, the trial judge must determine whether the evidence, viewed in its entirety, be it direct or circumstantial, and giving the State the benefit of all of its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, is sufficient to enable a jury to find that the State's

5

charge has been established beyond a reasonable doubt. On such a motion the trial judge is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State.

[State v. Kluber, 130 N.J. Super. 336, 341-42 (App. Div. 1974) (citations omitted).]

Under that lens, the record also reveals sufficient evidence to support a jury's finding that the State proved beyond a reasonable doubt that defendant was guilty of aggravated manslaughter as Oliver's accomplice. A person is an accomplice of another if: "[w]ith the purpose of promoting or facilitating the commission of the offense; he (a) [s]olicits such other person to commit it; [or] (b) [a]ids or agrees or attempts to aid such other person in planning or committing it." N.J.S.A. 2C:2-6(c)(1).[3]

Bianca Reeves testified at trial that she, defendant, Oliver, Chambers and another woman named Aniya were "riding around" in defendant's BMW when they were fired upon. She further testified as to her perceptions that evening. Defendant and Oliver "called [their] friends and they left" with the five or more friends who came to the codefendants' location. Later, after defendant called

---

[3] The statute also provides a third avenue of accomplice liability, not applicable here: "(c) [h]aving a legal duty to prevent the commission of the offense, fails to make proper effort so to do." N.J.S.A. 2C:2-6(c)(1).

A-0400-17T4

for his car to be brought to him, Chambers drove it to a location at which defendant, Oliver and "a lot of other people" congregated. About five or ten minutes after Oliver used the keys to access the BMW's trunk, Reeves heard gunshots. After the shooting ended, Reeves discovered Chambers had been shot. Defendant, upon seeing Chambers, said, "I can't believe these dumb[-]ass niggers shot her her fucking head."[4] Defendant left with his friends.

During their investigation of the shootings, Paterson police detectives twice interviewed Jocelyn Suggs. Video recordings of both interviews—the first, four days after the shooting and the second on December 3, 2014—were admitted into evidence and played for the jury.[5] In the statements, Suggs explained to the detectives that a large crowd of people had congregated in the area around a parked BMW in which Chambers sat prior to the shooting. Suggs was warned there was going to be a shooting. She placed defendant at the scene, at the side of the BMW, and described defendant as Chambers's boyfriend. Someone retrieved a gun from the BMW's interior. The first shots were fired

---

[4] The trial transcript indicates Reeves twice repeated the double "her" used in her quotes of defendant.

[5] The statements were admitted as inconsistent statements under N.J.R.E. 803(a)(1), per the trial judge's ruling after conducting a hearing pursuant to State v. Gross, 216 N.J. Super. 98, 110 (App. Div. 1987), aff'd, 121 N.J. 1 (1990).

from the gold Taurus as it drove by the group gathered near the BMW. Suggs observed defendant return fire with the smaller of the guns used. She told detectives an individual named Jahmad was at the scene, and that she heard him state that he had a gun. Suggs also told detectives a week or two after the shooting, she heard Oliver state that he "shot him in the eyeball."

Under those circumstances, where the evidence suggests defendant and Oliver had been together all evening, been shot at, left with "friends" and were together when fired upon a second time, whereafter defendant was seen firing a gun, and Oliver also admitted shooting Burroughs in the eye during the gunfight, there was sufficient evidence for the jury to find beyond a reasonable doubt that defendant either solicited Oliver to shoot Burroughs, or aided or agreed or attempted to aid him in planning or committing aggravated manslaughter, or both. We thus determine a motion presented pursuant to Rule 3:18-2 would have been denied.

As such, defense counsel was not ineffective under the dual-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 52 (1987). Because there was enough evidence presented to thwart a Rule 3:18-2 motion, defendant cannot establish his counsel "made errors so serious that counsel was not

functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," ibid. (quoting Strickland, 466 U.S. at 687), especially considering that defendant must overcome the "'strong presumption' that counsel exercised 'reasonable professional judgment' and 'sound trial strategy' in fulfilling his responsibilities," Hess, 207 N.J. at 147 (quoting Strickland, 466 U.S. at 689-90). For the same reason, defendant cannot demonstrate the second prong: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Castagna, 187 N.J. at 315 (quoting Strickland, 466 U.S. at 694). We discern no reason to set aside the jury's verdict.

II.

Defendant next contends he was denied the right to a fair trial because a color[6] crime scene photograph depicting Burroughs, lying dead in a pool of blood, was twice shown to the jury, and because the prosecutor later told the jury in summation that Burroughs "died in a halo, a bloody halo of his own blood." The photo, which apparently was shown on a screen visible to the jury, was identified by two officers who each testified that it depicted Burroughs as they found him at the scene. None of the defense counsel objected when the photo was displayed to the jury during each officer's testimony. Only when the

---

[6] The record contains only a black and white copy of the photograph.

A-0400-17T4

State moved the photo into evidence with numerous other exhibits, did all three defense counsel object. The trial judge ruled the photo inadmissible because the prejudice it engendered outweighed its probative value.

Defendant argues the display of the "gruesome" photo was unduly prejudicial and deprived defendant of a fair trial because it served no purpose other than to inflame the jury's passion. According to defendant, this error was especially prejudicial because of the alleged dearth of evidence supporting his conviction.

Because no objection was made, we will not reverse unless the error was "clearly capable of producing an unjust result," R. 2:10-2; that is, unless there is a "reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached," State v. Macon, 57 N.J. 325, 336 (1971). We do not perceive that to be the case.

The record reveals the photo was briefly displayed during each officer's testimony before the prosecutor moved on to another exhibit. The first officer testified the photo depicted "the male that we found on the corner who was shot"; and confirmed that the condition of the man in the photo was as the officer found him. When the second officer was shown the photo, he was asked, "Is this what

Mr. Burroughs looked like when you arrived at the scene?" He simply responded affirmatively.

During an in-chambers colloquy among counsel and the judge prior to the redirect examination of the first officer, the judge commented, "[w]ith regard to the pictures that were published, . . . my . . . assumption that . . . if I didn't hear any objection, which means you're fine with them. And do me a favor. If there are pictures that are going to be published . . . just make sure you guys are all in agreement." The prosecutor responded that he spoke to defense counsel about the photographs in advance and "told them if you're going to have any objection to publish[ing] them[,] . . . let me know."

We also discern that in the judge's final jury charge, when discussing "the evidence that [the jury] may consider in judging the facts of this case," he told the jury that the term, evidence, included "any exhibits that have been admitted into evidence," and that "any exhibit that has not been admitted into evidence cannot be given to you in the jury room even though it may have been marked for identification. Only those items admitted into evidence can be given to you." The jury is presumed to have followed that instruction. See State v. Loftin, 146 N.J. 295, 390 (1996) ("That the jury will follow the instructions given is presumed.").

Under those circumstances, the brief display of the photo, albeit twice, was not clearly capable of causing an unjust result, leading the jury to an outcome it might not have otherwise reached.

Further, the prosecutor's remarks were untethered to the photograph. Although defendant ascribes the prosecutor's description to the photo, the prosecutor did not mention it. We also note the prosecutor's statement could have been fair comment on the first officer's testimony that, upon arrival at the crime scene, he "saw a male down on the sidewalk bleeding heavily." He described the victim's condition as "laying face up on the sidewalk bleeding from his head." "Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999). "Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial." Id. at 83.

We, therefore, find meritless defendant's contention that he was deprived of a fair trial because the photo was twice displayed.

### III.

Defendant was sentenced to a twenty-year prison term, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early

Release Act (NERA), N.J.S.A. 2C:43-7.2, for the lesser-included offense of aggravated manslaughter; a seven-year concurrent term for unlawful possession of a weapon; and a consecutive seven-year sentence, also subject to a NERA parole ineligibility period, for aggravated assault.

The trial judge applied aggravating factors one, three, six and nine, N.J.S.A. 2C:44-1(a)(1), (3), (6) and (9), to all counts, and applied aggravating factor two, N.J.S.A. 2C:44-1(a)(2), separately, to the aggravated assault charge.

The court attributed "medium weight" to aggravating factor one, "[t]he nature and circumstances of the offense," N.J.S.A. 2C:44-1(a)(1), noting the shots were fired at a moving target—the Taurus—in the dark in a residential neighborhood, when numerous young people congregated. The judge concluded: "the senseless nature of the shooting and the fact that . . . defendants fled the scene . . . leads this [c]ourt to find that the aggravated manslaughter and the aggravated assault were committed in a depraved manner."

With respect to the aggravated assault of Chambers, the court attributed "somewhat low weight" to aggravating factor two, "[t]he gravity and seriousness of harm inflicted on the victim," N.J.S.A. 2C:44-1(a)(2), due to the severity of the injury she suffered. The judge acknowledged defendant remained on the

scene to ensure paramedics were called, but also noted defendant fled the scene before they arrived.

The judge gave "medium weight" to aggravating factor three, "[t]he risk that the defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3), recognizing defendant had accumulated a criminal record consisting of six prior arrests, two municipal court convictions and a felony conviction, as well as defendant's lack of employment history and substance abuse. The judge also noted various witnesses mentioned defendant's affiliation with a local street gang;[7] but acknowledged he did not have any: "independent evidence or substantial evidence as to the extent of . . . defendant's involvement[.]" Accordingly, the judge gave "minimum to low weight" to defendant's gang affiliation in his analysis of aggravating factor three.

Defendant argues the judge improperly found aggravating factor one, because the jury—in acquitting defendant of murder and attempted murder, but convicting on the lesser-included charges—concluded the injuries to Burroughs and Chambers were unintentional; and "there was no intentional infliction of any additional pain or suffering." Defendant also asserts the trial judge should

---

[7]  A pretrial ruling barred the prosecutor from mentioning defendant's gang affiliation at trial.

not have considered evidence of gang affiliation because the judge acknowledged a lack of independent evidence of defendant's gang involvement. In addition, defendant argues the judge misapplied State v. Carey, 232 N.J. Super. 553 (App. Div. 1989), in considering evidence of gang affiliation that was not admitted at trial.

Applying a deferential standard of review to the judge's sentencing determination, we find no error in the judge's identification and balance of the "aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)).

Recognizing the judge's application of aggravating factor one "must be based on factors other than the death of the victim and the circumstances essential to support a finding that the defendant has acted with extreme indifference to human life," State v. Fuentes, 217 N.J. 57, 76 (2014), we conclude the judge properly analyzed facts that went beyond the essential elements of the crime. Multiple shots were fired in the dark at a moving target in a residential neighborhood in an area populated by numerous bystanders. This combination of facts transcends the requisite basis for reckless indifference and buttresses the application of aggravating factor one. Defendant placed

numerous people at risk of bodily injury or death by wantonly and repeatedly firing. See Lawless, 214 N.J. at 609-10 ("[C]ourts applying aggravating factor one focus on the gravity of the defendant's conduct, considering both its impact on its immediate victim and the overall circumstances surrounding the criminal event.").

We determine the remainder of defendant's sentencing arguments to be without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). We note only that the judge credited the testimony of several witnesses about defendant's involvement in a local gang, and who "testified that [the] shooting was a retaliation and a response to gang activity," in finding defendant's gang affiliation. See State v. Smith, 262 N.J. Super. 487, 530 (App. Div. 1993) ("[S]entencing judges may consider material that otherwise would not be admissible at trial, as long as it is relevant and trustworthy."). The judge attributed only "minimum to low weight" to that affiliation because there was no evidence establishing the extent of defendant's involvement. Further, the presence report contained the following: "During the course of the investigation detectives ascertained that members of a local street gang named 'Brick Squad' were involved in this incident. Two members of the gang; Francis Brace AKA Fat Fat and Jahmad Green . . . were identified as suspects."

A-0400-17T4

Moreover, defendant's lengthy record alone warranted the "medium weight" the judge attributed to aggravating factor three.

Finally, the judge properly applied the Yarbough[8] factors in imposing a consecutive sentence for the aggravated assault of Chambers. As the judge noted, Burroughs and Chambers were in "two separate locations" when they were shot; Chambers was seated inside the BMW, and Burroughs was shot "on the sidewalk some ways away." Accordingly, the judge concluded, "[t]o issue

---

[8]  In Yarbough, 100 N.J. at 644, the Court delineated factors upon which a sentencing court should focus in determining whether a sentence should run concurrent or consecutive:

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims;
>
> (e) the convictions for which the sentences are to be imposed are numerous.

17

concurrent sentences would not adequately take into account the distinct nature of the two harms inflicted by these defendants."

"[A] trial court has the discretion to impose consecutive sentences in cases where . . . the only factor supporting consecutive sentencing is multiple victims." State v. Molina, 168 N.J. 436, 442 (2001). "Although that principle resonates most clearly in cases in which a perpetrator intentionally targets multiple victims . . . it also applies to cases in which, as here, the defendant does not intend to harm multiple victims but it is foreseeable that his or her reckless conduct will result in multiple victims." State v. Carey, 168 N.J. 413, 429 (2001).

We perceive no violation of the sentencing guidelines; the aggravating and mitigating factors found by the judge were based upon credible evidence in the record; and the sentence imposed for these multiple crimes is not "clearly unreasonable so as to shock the judicial conscience." Fuentes, 217 N.J. at 70 (quoting State v. Roth, 95 N.J. 334, 365 (1984)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION