841 A.2d 505 (2004)
366 N.J. Super. 447
STATE of New Jersey, Plaintiff-Respondent,
v.
Shelton BROOKS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 2, 2003.
Decided February 11, 2004.
*508 Yvonne Smith Segars, Public Defender, attorney for appellant (Claire L. Pellerito, Designated Counsel, on the brief).
Peter C. Harvey, Attorney General of New Jersey, attorney for respondent (Elizabeth M. Devine, Deputy Attorney General, of counsel and on the brief).
Before Judges PRESSLER, PARKER and COLEMAN. *506
*507 The opinion of the court was delivered by PARKER, J.A.D.
After a trial by jury, defendant Shelton Brooks was found guilty of third degree distribution of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-5a(1) and 5b(3) (Count One); and second degree distribution of CDS within 500 feet of public housing, N.J.S.A. 2C:35-7.1 (Count Two). At sentencing, Count One was merged into Count Two, and he was sentenced to a term of seven years with no period of parole ineligibility.
These charges resulted from a routine undercover drug operation. Detective Robert Orro, of the Ocean County Narcotics Task Force, purchased drugs from defendant within 500 feet of the Robeson Village public housing facility.
Defendant testified at trial that another detective, William Federico, was the undercover officer to whom he sold cocaine. Detective Federico testified, however, that he never acted as an undercover officer in Franklin Township, where the incident occurred.
In this appeal, defendant argues:
POINT ONE
THE TRIAL COURT SHOULD HAVE ENTERED A JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT OR FOR A NEW TRIAL ON BEHALF OF DEFENDANT AS NO REASONABLE JURY COULD HAVE FOUND DEFEDANT GUILTY
POINT TWO
A FINDING OF NOT GUILTY SHOULD HAVE BEEN ENTERED BY THE TRIAL COURT BASED UPON DUE PROCESS ENTRAPMENT
POINT THREE
THE PORTION OF N.J.S.A. 2C:35-7.1 MAKING IT A SECOND DEGREE OFFENSE TO DISTRIBUTE CDS WITHIN 500 FEET OF A PUBLIC HOUSING FACILITY SHOULD BE DECLARED UNCONSTITUTIONAL AS IT DISCRIMINATES ON THE BASIS OF RACE, ETHNIC BACKGROUND, NATIONAL ORIGIN AND/OR FINANCIAL STATUS
POINT FOUR
THE SEVEN YEAR SENTENCE IMPOSED BY THE COURT IS EXCESSIVE

I
Defendant argues that his motion for a judgment of acquittal pursuant to R. 3:18-2 should have been granted or, alternatively, his motion for a new trial should have been granted pursuant to R. 3:20-1.
*509 In deciding a motion for a judgment of acquittal, the trial judge must determine "whether the evidence ... is sufficient to warrant a conviction." State v. Reyes, 50 N.J. 454, 458-59, 236 A.2d 385 (1967); State v. Kluber, 130 N.J.Super. 336, 342, 327 A.2d 232 (1974), certif. denied, 67 N.J. 72, 335 A.2d 25 (1975). "More specifically, the trial judge must determine whether the evidence, viewed in its entirety ... giving the State the benefit of all of its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, is sufficient to enable a jury to find that the State's charge has been established beyond a reasonable doubt." Kluber, supra, 130 N.J.Super. at 341-42, 327 A.2d 232. The trial judge must consider only the existence of such evidence, not its "worth, nature, or extent." Id. at 342, 327 A.2d 232.
We are satisfied that there was sufficient evidence for the jury to find defendant guilty beyond a reasonable doubt. Both Detective Orro and defendant testified that defendant sold the cocaine to an undercover officer. Even if the jury believed defendant's testimony that he sold the drugs to Detective Federico, there was still sufficient evidence for the jury to find beyond a reasonable doubt that defendant was guilty of distribution. Defendant's motion for a judgment of acquittal was properly denied.
"[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Russo, 333 N.J.Super. 119, 137, 754 A.2d 623 (2000). Our scope of review is limited to a determination of "whether the findings made by the trial court could reasonably have been reached on sufficient credible evidence present in the record." Ibid. Moreover, we will "give deference to the trial judge's feel for the case since he presided over [it] ... and had the opportunity to observe and hear the witnesses as they testified." Ibid.
Defendant argues that there were too many factual inconsistencies to support the verdict. First, he claims that the informant's testimony was unreliable because he was an admitted drug user and had acknowledged that he was an informant for the police to "work off" his pending charges. Second, defendant contends that both he and his co-defendant testified that that they did not sell the drugs to Detective Orro, but to Detective Federico.
Defendant overlooks the facts that he and his co-defendant were admitted drug users, and that defendant admitted selling drugs to an undercover officer, albeit he claimed it was a different officer. Defendant's motion for a new trial was properly denied.

II
Defendant next argues that his conviction should be reversed on the ground of due process entrapment. "The essence of due process entrapment inheres in the egregious or blatant wrongfulness of the government conduct." State v. Johnson, 127 N.J. 458, 470, 606 A.2d 315 (1992). "Due process entrapment ... is an `involvement-based' doctrine, which focuses on the extent of the government's involvement in the crime, not merely on whether that conduct objectively and subjectively induced or caused the crime." Ibid. The court, rather than the jury, must resolve the issue of due process entrapment, and "[t]he State [has the burden of]... disprove[ing] due process entrapment by `clear-and-convincing' evidence." State v. Florez, 134 N.J. 570, 590, 636 A.2d 1040 (1994).
*510 In determining whether due process entrapment has occurred, the court must consider:
(1) whether the government or the defendant was primarily responsible for creating and planning the crime; (2) whether the government or the defendant primarily controlled and directed the commission of the crime; (3) whether objectively viewed the methods used by the government to involve the defendant in the commission of the crime were unreasonable; and (4) whether the government had a legitimate law enforcement purpose in bringing about the crime.
Johnson, supra, 127 N.J. at 474, 606 A.2d 315.
The primary factors governing due process entrapment are: (1) "the justification for the police in targeting the defendant as a criminal suspect;" and (2) "the nature and extent of the government's actual involvement in bringing about the crime." Id. at 474-75, 636 A.2d 1040.
Defendant argues that the police lacked justification to target him for the crime because he was "unknown to the police as a street dealer or otherwise." Rather, defendant claims he was chosen on an "ad hoc" basis, i.e., he was in the area on the night the officers were present. Defendant further contends that the crime was completely created by both the police and the informant. He maintains that the informant, a drug dealer working for the police, was told by the police to get anyone he could find to sell drugs to the undercover officer. The informant targeted random individuals, provided them with the cocaine to commit the offense, and set up defendant by offering him a reward for the "favor" of selling the cocaine to the undercover officer.
In Johnson, the defendant, a police officer and regular cocaine user, told his supplier that he would like to "rip off" a drug dealer with a lot of cocaine, sell it and make a lot of money. Johnson, supra, 127 N.J. at 461, 606 A.2d 315. When the supplier was arrested several months later, he became an informant and told drug enforcement agents that Johnson would be willing to "rip off" dealers and sell the drugs for money. Ibid. The informant then worked with agents and provided defendant with the opportunity to buy drugs. Id. at 463, 606 A.2d 315. When defendant did, he was charged and ultimately convicted. Id. The Court determined that although the government solicited defendant to commit the crime, it was defendant's basic idea. Id. at 476, 606 A.2d 315. Noting that defendant regularly engaged in illegal personal drug use, the Court found that police had a legitimate law enforcement purpose to stop defendant's criminal activity, and therefore, had adequate justification to direct their investigative authority against him. Id. at 477, 606 A.2d 315.
Similarly, defendant admitted he engaged in illegal personal use of marijuana, that he was actively looking to purchase marijuana on the night of the incident and that he sold drugs to an undercover officer. The police had adequate justification to investigate defendant.
Here, as in Johnson, "the circumstances surrounding the creation of the crime, the methods undertaken by the government to commit the crime, and the actions entailed in the commission of the crime itself" are relevant to our review. Johnson, supra, 127 N.J. at 477, 606 A.2d 315. Although the informant provided defendant with a specific plan, it was defendant who authored the basic idea for the crime. The police did not "resort to excessive inducements"; "repeated requests or persistent solicit[ation] in the face of unwillingness"; nor did they "appeal to humanitarian instincts *511 involving sympathy, past friendship or the like...." Id at 479, 606 A.2d 315.
Defendant claims that the informant "induced" him to sell the cocaine as a favor in exchange for marijuana or money. The jury had the opportunity to weigh the testimony and make its determination. Even if the jury believed defendant's version, the evidence indicated very little "inducement" by the informant and very little resistance by defendant. Ibid. The evidence does not support defendant's claim of due process entrapment.

III
Defendant argues that N.J.S.A. 2C:35-7.1, which upgrades the crime of distribution of CDS to the second degree and enhances the penalties for distribution within 500 feet of a public housing facility, has a discriminatory impact upon the minority and poor populations that make up a large percentage of the residents of public housing. Defendant maintains that the statute discriminates on the basis of race, ethnicity and national origin, and must, therefore, be analyzed under the strict scrutiny test.
"A statute, otherwise neutral on its face, must not be applied so as invidiously to discriminate on the basis of race." Washington v. Davis, 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). "[S]tatutes must further compelling state interest and there must be no less restrictive means of accomplishing that objective." Barone v. Dep't of Human Services, 107 N.J. 355, 356, 526 A.2d 1055 (1987). There are three levels of scrutiny applied to equal protection claims: (1) statutes regulating a "fundamental right" or a "suspect class" are analyzed under strict scrutiny; (2) statutes regulating a "semi-suspect" class or substantially, yet indirectly[,] affecting a fundamental right will be subject to "intermediate scrutiny"; and (3) if neither strict nor intermediate scrutiny applies, then the court must apply a "rational basis" test. A "[s]tatute must be rationally related to the achievement of a legitimate state interest." Barone, supra, 107 N.J. at 365, 526 A.2d 1055.
According to the Resident Characteristics Report[1] released by the U.S. Department of Housing and Urban Development (HUD), sixty percent of the residents of public housing in New Jersey earn an "extremely low income", or "below thirty percent of median income" of the state. Resident Characteristic Report, www.hud.gov, Nov. 25, 2003. Another twelve percent of the residents of public housing earn only fifty percent of the State's median income. Ibid. HUD reports that the average annual income for New Jersey residents in public housing is just $12,550. Ibid. Additionally, while representing only thirteen percent of the total population of the United States, African Americans or Blacks made up forty-six percent of the public housing population in the United States and forty-eight percent of the public housing residents in New Jersey. Id.
Although the poor and minorities occupy a large percentage of public housing, defendant's argument presumes, without proofs, that the residents of public housing are convicted of distribution within 500 feet of public housing disproportionately more often than non-residents. Indeed, defendant, himself, is not a resident of the public housing facility (Robeson Village) near which he sold the drugs. Even *512 if such proofs were presented, however, the analysis does not end there. Discriminatory purpose or intent must be demonstrated. See Washington, supra, 426 U.S. at 242, 96 S.Ct. 2040; Wright v. Council City of Emporia, 407 U.S. 451, 92 S.Ct. 2196, 33 L. Ed.2d 51 (1972).
Here, the expressed purpose of the legislature in adopting N.J.S.A. 2C:35-7.1 was to protect the poor and minorities who live in public housing from the rampant spread of drugs. See Office of the Governor: News Release, Jan. 9, 1990. Defendant has presented no proofs that the purpose or the effect of the statute is discriminatory. Consequently, we find no constitutional infirmity in N.J.S.A. 2C:35-7.1.

IV
Finally, defendant argues that the trial court improperly applied the statutory guidelines in sentencing him to the presumptive term of seven years. He claims that if the court had properly weighed the aggravating and mitigating factors, he would have received the minimum sentence of five years for his violation of N.J.S.A. 2C:35-7.1.
The scope of appellate review of sentences is normally limited to the question of whether the judge abused his or her discretion "by the imposition of a sentence which is manifestly excessive under the particular circumstances of the case." State v. Roth, 95 N.J. 334, 362, 471 A.2d 370 (1984) (quoting State v. Leggeadrini, 75 N.J. 150, 157, 380 A.2d 1112 (1977)). We will only modify a sentence when it is "clearly mistaken." State v. Kromphold, 162 N.J. 345, 355, 744 A.2d 640 (2000) ("Although appellate courts possess original jurisdiction over sentencing, the exercise of that jurisdiction should not occur regularly or routinely...."). We find no abuse of discretion in the sentence imposed here.
Affirmed.
NOTES
[1] The Resident Characteristic Report provides "general information about households in Public Housing, Indian Housing, or who receive Section 8 assistance." Additionally, the report outlines "aggregate demographic and income information that allows for an analysis of HA operations". Resident Characteristic Report at www.hud.gov, Nov. 25, 2003.