**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1996-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILLIAM J. KANE,

    Defendant-Appellant.

_____

Submitted December 16, 2020 – Decided January 26, 2021

Before Judges Fuentes, Rose, and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-02-0316.

Joseph E. Krakora, Public Defender, attorney for appellant (Peter A. Gaudioso and Althea L. Daley, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant William J. Kane appeals from a November 13, 2018 judgment of conviction for drug offenses after trial. We affirm.

I.

We derive the following facts from the suppression motion and trial record. On July 23, 2015, at approximately 3:00 p.m., Detectives David Guzman and Juan DeJesus of the Perth Amboy police department were on plain-clothes patrol in an unmarked car. Detective Guzman, who was driving the vehicle, observed defendant driving a blue Mitsubishi Galant in the opposite direction. Detective Guzman followed defendant because the Detective had received information "from several confidential informants stating that [defendant] was . . . distributing quantities of heroin within the City of Perth Amboy." After making a U-turn, the Detectives surveilled defendant, who was known to Detective Guzman from two previous encounters,[1] for five or six blocks.

Defendant pulled into a residential area, and Detective Guzman parked one vehicle length behind him. Detective Guzman observed a man, later identified as co-defendant Frank Kochick, approach the driver's side of defendant's vehicle and reach through the open window. Based on his training

---

[1] Detective Guzman previously arrested defendant on two separate occasions, first for "having a prescription on him," and the second for a "DUI situation."

in drug recognition and distribution and the information he received from confidential informants, Detective Guzman suspected he observed defendant engaged in a narcotics transaction. Detectives Guzman and DeJesus approached defendant's vehicle with their badges displayed, and Detective Guzman yelled, "Police." In response, defendant attempted to drive away but his car only moved about a foot.

Upon approaching the driver's side of defendant's vehicle, Detective Guzman observed an open black plastic bag containing eighteen glassine envelopes of heroin stamped, "Tom & Jerry," and money on defendant's lap. Defendant and Kochick "became a little startled." Defendant and Kochick were placed under arrest. Following a search incident to arrest, an LG flip phone and $362 in cash were recovered from defendant. No money or drugs were found on Kochick.

After his arrest, Kochick gave a videotaped statement to Detective Guzman. Kochick stated he was sitting on a friend's porch when defendant, known to him as "Close," pulled up in his Mitsubishi. According to Kochick, defendant is a "Spanish" male who is bald, has "no facial hair," and "always wears a bandana." After encountering defendant on the day in question, Kochick attempted to purchase two bags of heroin for $18 and put the money on

A-1996-18T4

defendant's lap. When the Detectives approached, the sale was aborted. Kochick indicated that he previously purchased heroin from defendant on approximately ten occasions.

In February 2016, a Middlesex Grand Jury returned Indictment No. 16-02-0316, charging defendant with third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a) (count one); and third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5 (count two).

Defendant filed a motion to suppress the videotaped statement Kochick gave to Detective Guzman after the State informed the trial court it anticipated Kochick would have recall issues during his trial testimony. The prosecutor reviewed the videotaped statement with Kochick during a pre-trial conference, and he responded, "Even though that's me, I don't recall any of the facts." The State sought to elicit testimony from Kochick at trial first before making an application under Rule 803(c)(5) to have the videotaped statement played for the jury as a recorded recollection.

The trial court conducted an in limine evidentiary hearing. In its ruling, the court permitted Kochick to read a redacted version of his statement to the jury as past recollection recorded under Rule 803(c)(5). The jury was provided with a transcript of the videotaped statement simultaneously as Kochick read it

into the record. The trial court gave a limiting instruction to the jury on this issue.

In pertinent part, Kochick's statement explained how he bought "dope" from the "Hispanic guy" in the Mitsubishi. Kochick also stated he threw $18 in the window in exchange for two bags of heroin, but the police arrived before the transaction could be completed. On cross-examination, Kochick testified he could not recall what happened on July 23, 2015, or whether his statement to police was truthful. He also stated that he did not want to testify at trial because he did not remember the events of that day.

Defendant moved to suppress the evidence seized during the search of his vehicle. The trial court held an evidentiary hearing on November 1, 2017, and denied defendant's motion in an oral opinion with a written order.

On November 14, 2017, the jury found defendant guilty of both counts in the indictment. On February 5, 2018, the trial court denied defendant's motion to set aside the verdict and granted him permission to apply for entry into Drug Court. The application was granted, and on October 25, 2018, defendant was sentenced to five-years' probation in Drug Court.

This appeal followed, with defendant presenting the following arguments:

POINT ONE

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS WHERE THE DETECTIVES DID NOT HAVE A REASONABLE OR ARTICULABLE BASIS TO STOP AND SEARCH THE DEFENDANT.

POINT TWO

THE TRIAL COURT ERRED IN ADMITTING THE STATEMENT OF CO-DEFENDANT FRANK KOCHICK AS A PAST RECOLLECTION RECORDED AND PROVIDING THE JURY WITH THE ACCOMPANYING TRANSCRIPT.

POINT THREE

THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTION FOR A NEW TRIAL.

## II.

We apply a highly deferential standard of review to a trial judge's determination on a motion to suppress. State v. Gonzales, 227 N.J. 77, 101 (2016). We will

> uphold the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings. Those factual findings are entitled to deference because the motion judge . . . has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy."

A-1996-18T4

> [Ibid. (citation omitted) (quoting State v. Johnson, 42
> N.J. 146, 161 (1964)).]

In State v. Nelson, 237 N.J. 540, 551 (2019), our Supreme Court reiterated: "An appellate court should not disturb the trial court's findings merely because 'it might have reached a different conclusion were it the trial tribunal' or because 'the trial court decided all evidence or inference conflicts in favor of one side' in a close case," quoting State v. Elders, 192 N.J. 224, 244 (2007). "The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" Id. at 552. See also State v. Robinson, 200 N.J. 1, 15 (2009).

"[U]nder . . . the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of our State Constitution, searches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." Elders, 192 N.J. at 246. Here, the trial court found Detective Guzman stopped defendant because:

> [O]bviously he knew [defendant], had prior . . . dealings
> with [defendant], he knew [defendant] was into heroin
> obviously because of . . . prior encounters, one in which
> a passenger was in the middle of shooting up when he
> encountered [defendant].

He knew his car and for lack of better terms, whether it's reliable, unreliable, the word on the street was [defendant's] dealing heroin, and he knew what— he knew him and he knew the car. And I think an inference can be drawn that these guys aren't going to follow any old car. They're not going to waste their time.

They're . . . going to invest their time and efforts in something that they think is going to be fruitful, so they followed him. And he pulled over on his own and they can pull over and they can—surveil him. So far, there's no interaction and no . . . restriction . . . of their movement.

And they walk up to the car . . . . They see Kochick's coming out and reaching to . . . what appeared to perhaps be a . . . a hand-to-hand transaction that was . . . occurring.

So, you throw all that into the mix and I think it's safe to say that they had reasonable articulable suspicion to detain them and—for an investigati[ve] detention. But what happened was before there could even be an investigati[ve] detention, [Detective] Guzman saw that bag on [defendant's] lap with the heroin folds in it.

So, it never got to the point whether it was going to be an investigative detention. It went straight to an arrest based on—plain view.

In light of the court's factual findings, we are satisfied the court correctly denied defendant's motion to suppress. In doing so, we defer to the factual findings made by the trial court because they are well-supported by the evidence

presented. Nelson, 237 N.J. at 551. In view of the totality of the circumstances, which rapidly unfolded in this case, the Detectives had probable cause to arrest defendant. Ibid.

According to the testimony of the Detectives, found credible by the trial court, Detective Guzman had arrested defendant in the past and received information from reliable, confidential informants that defendant was dealing heroin in Perth Amboy. Detective Guzman saw Kochick place his hand in the window of defendant's vehicle and suspected a hand-to-hand narcotics transaction was occurring based upon his knowledge of defendant in conjunction with the informants' tips. Moreover, both defendant and Kochick "appeared startled," and defendant attempted to drive away.

We conclude the totality of the circumstances justified the Detectives' stop of defendant's vehicle. See State v. Bacome, 228 N.J. 94, 103 (2017) ("During a Terry[2] motor vehicle stop, a police officer may detain individuals for a brief period, if the stop was 'based on reasonable and articulable suspicion that an offense . . . has been or is being committed.'"). Detective Guzman observed the drugs in plain view on defendant's lap. In State v. Gonzalez, 227 N.J. 77 (2016), our Supreme Court modified the plain view doctrine to eliminate the

---

[2] Terry v. Ohio, 392 U.S. 1 (1968).

 A-1996-18T4

"inadvertent" presence of the police officer required under State v. Bruzzese, 94 N.J. 210, 236-38 (1983). The Court held: "Provided that a police officer is lawfully in the viewing area and the nature of the evidence is immediately apparent (and other constitutional prerequisites are met), the evidence may be seized." Gonzalez, 227 N.J. at 82 (emphasis added).

We are convinced that the evidence presented at the suppression hearing fully supports the trial court's determination that the Detectives' stop of defendant's vehicle and seizure of the evidence were justified under the exigent circumstances and plain view exceptions to the warrant requirement.

III.

We next consider defendant's argument that the trial court erred in admitting portions of Kochick's videotaped statement to the police as past recollection recorded during the trial. Prior to trial, the court conducted a Rule 104(a) hearing. Kochick testified at the hearing that he recalled portions of the statement he gave to police but not the entirety of the statement. The trial court found Kochick met the test of insufficient present recollection under Rule 803(c)(5) and permitted him to read into the record only the parts of the statements he did not recall. The transcript of Kochick's statement was not

admitted into evidence as defendant contends on appeal but was provided to the jury as an aid when Kochick testified.

When reviewing a trial court's decision to admit evidence, we are "limited to examining the decision for abuse of discretion." State v. Kuropchak, 221 N.J. 368, 385 (2015) (quoting Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)). Under the abuse of discretion standard, "an appellate court should not substitute its own judgment for that of the trial court, unless the trial court's ruling 'was so wide of the mark that a manifest denial of justice resulted.'" Id. at 385-86 (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). "Considerable latitude is afforded a trial court in determining whether to admit evidence . . . ." State v. Feaster, 156 N.J. 1, 82 (1998).

Rule 803(c)(5) allows a party to read a past recorded recollection when the witness does not remember the circumstances of what occurred or his or her previous testimony. ("When the witness does not remember part or all of the contents of a writing, the portion the witness does not remember may be read into evidence . . . ."); see also State v. Cestone, 38 N.J. Super. 139, 146 (App. Div. 1955). In State v. Gore, our Supreme Court set forth the prerequisites for a statement to be admissible under Rule 803(c)(5). 205 N.J. 363, 376 (2011). The witness must be shown to have an "impaired memory." Ibid. (citing State

v. Williams, 226 N.J. Super. 94, 103 (App. Div. 1988)). After that is satisfied, then the hearsay exception in Rule 803(c)(5) becomes applicable. The Rule allows for the use of a written statement to refresh a witness's recollection:

> A statement concerning a matter about which the witness is unable to testify fully and accurately because of insufficient present recollection if the statement is contained in a writing or other record that (A) was made at a time when the fact recorded actually occurred or was fresh in the memory of the witness; and (B) was made by the witness or under the witness' direction or by some other person for the purpose of recording the statement at the time it was made; and (C) the statement concerns a matter of which the witness had knowledge when it was made. When the witness does not remember part or all of the contents of a writing, the portion the witness does not remember may be read into evidence but shall not be introduced as an exhibit over objection. This exception does not apply if the circumstances indicate that the statement is not trustworthy.
>
> [N.J.R.E. 803(c)(5).]

In addition, Rule 607 allows extrinsic credibility evidence to be introduced by any party. See State v. Parker, 216 N.J. 408, 418 (2014) ("In short [Rule] 607 permits the introduction of extrinsic evidence affecting a witness'[s] credibility regardless of whether that evidence is relevant to any other issue in the case.")

Having reviewed the record, we conclude the trial court did not abuse its discretion in admitting a portion of Kochick's statement to the police. Kochick's

statement met the requirements of Rule 803(c)(5). The statement was made within thirty minutes on the day of his and defendant's arrest and concerned matters that Kochick recalled at the time he gave his statement but did not remember at the time of trial. The trial court noted that Kochick's inability to recall matters that occurred on July 23, 2015, was "genuine." In addition, the record supports the trial court's conclusion that Kochick's statement was "trustworthy" and consistent with the observations Detective Guzman made of his conduct. Moreover, the trial court found Kochick's answers to questions were responsive, and he did not show any signs of duress.

We discern no abuse of discretion in allowing the State to use portions of Kochick's police interview videotaped statement, as probative in challenging his credibility at trial. The jury was able to consider Kochick's live testimony and the portions of his statement given to police that he did not presently recall and gauge his demeanor on the witness stand. Under the circumstances, the use of Kochick's statement to the police was not an error "clearly capable of producing an unjust result." R. 2:10-2.

## IV.

Finally, defendant argues that the trial court erred in failing to grant his motion for a new trial under Rule 3:20-1. During its opening statement, the

prosecutor mentioned that Detectives Guzman and DeJesus were conducting "surveillance" of defendant. In defendant's view, Detective Guzman's testimony regarding this prior knowledge and surveillance of defendant, coupled with the use of Kochick's redacted transcript, warrants a new trial. We find no merit to defendant's argument.

Rule 3:20-1 provides that a trial court may not set aside a jury's verdict and order a new trial "unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law." Similarly, a trial court's ruling on a defendant's new trial motion "shall not be reversed unless it clearly appears there was a miscarriage of justice under the law." R. 2:10-1; State v. Sims, 65 N.J. 359, 373-74 (1974).

"The 'semantic' difference between 'miscarriage of justice' and 'manifest denial of justice under the law' is an 'oversight and should not be construed as providing for a different standard in criminal cases at the trial level than that applicable to appellate review . . . .'" State v. Armour, 446 N.J. Super. 295, 306 (App. Div. 2016) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 3:20-1 (2021)). The Supreme Court has "explained that a 'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence

to support the finding,' when there has been an 'obvious overlooking or under-valuation of crucial evidence,' or when the case culminates in 'a clearly unjust result.'" Hayes v. Delamotte, 231 N.J. 373, 386 (2018) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521-22 (2011)).

The decision whether to grant or deny a motion for a new trial is left to the trial judge's sound discretion, and we should interfere with the exercise of that discretion only when "a clear abuse has been shown." State v. Brooks, 366 N.J. Super. 447, 454 (App. Div. 2004) (quoting State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000)).

Here, the trial court noted the Detectives improvidently testified as to their surveillance of defendant and that Detective Guzman told Detective DeJesus he recognized defendant. However, the trial court concluded the State's reference to surveillance did not rise to the level of prejudice that would warrant a new trial. Moreover, defense counsel opted against a curative instruction given that the remark was, in his own description, "fleeting."

A trial court's denial of a defendant's motion may not be reversed on appeal unless "it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1; Sims, 65 N.J. at 373-74. It is also well-established that a trial court may not "set aside the verdict of the jury as against the weight of the

evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law." R. 3:20-1.

Given the totality of the evidence and reasonable inferences that the jury could have drawn from the evidence, we conclude that defendant's motion for a new trial was properly denied. Detective Guzman's testimony was relevant on surveillance to explain to the jury why the Detectives were in the neighborhood when they observed the hand-to-hand drug transaction. And, the prosecutor made no reference to surveillance during closing arguments. The trial court found from its "feel of the case" that the comments and testimony had no prejudicial impact on the outcome of the case. See Hayes 231 N.J. at 386 (citations omitted). These findings are supported in the trial record and were not erroneous.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1996-18T4